UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA

        Plaintiff,

vs.

ONE BEECHCRAFT KING AIR
200 AIRCRAFT REGISTERED AS
N301GG INCLUDING ALL
EQUIPMENT AND ACCESSORIES,

        Defendant.

_____ /

## COMPLAINT FOR FORFEITURE *IN REM*

    Plaintiff, United States of America, files this civil action for forfeiture in rem of the

defendant and alleges as follows:

    1.    This is a civil action for forfeiture in rem of one Beechcraft King Air 200 Aircraft

registered as N301GG, including all equipment and accessories.

    2.    Subject matter jurisdiction is vested in this Court pursuant to Title 28, United States

Code, Sections 1345, 1355(a), and 2461.

    3.    This Court has in rem jurisdiction over this matter pursuant to Title 28, United

States Code, Sections 1355(b) and (d), and 2461(b).

    4.    The Court has venue pursuant to 28 U.S.C. § 1355(b) and 28 U.S.C. § 1395, in that

the acts or omissions giving rise to the forfeiture occurred within the Southern District of Florida

and the action accrued in the Southern District of Florida.

5.    The defendant is one Beechcraft King Air 200 Aircraft registered as N301GG, including all equipment and accessories.   The Defendant Aircraft was seized by the Drug Enforcement Administration in Dade County, Florida, and is presently in the custody of the U.S. Marshals Service being stored at Midland, Texas.

6.    The United States seeks forfeiture of the Defendant Aircraft pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that the defendant is property involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956, and 1957, or property traceable to such property.

7.    Title 18 United States Code, Section 1956 provides in pertinent part:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or ...
>
> (B) knowing that the transaction is designed in whole or in part -
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity...
> shall be sentenced to a fine of not more than $500,000.00 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both...
> (h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission which was the object of the conspiracy.

8.    Title 18, United States Code, Section 1957 provides in pertinent part:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).
>
> (d) the circumstances referred to in subsection (a) are-

2

> (1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States.

9.   "Criminally derived property" is defined in 18 U.S.C. § 1957(f)(2) as "any property constituting, or derived from, proceeds obtained from a criminal offense."

10.   "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any act or activity constituting an offense under 18 U.S.C. § 1961(1).   Section 1961(1) lists as offenses violations of 18 U.S.C. § 1956 and 1957.

## FACTUAL ALLEGATIONS

11.   Paragraphs 1 through 10 are realleged herein.

12.   For a number of years, agents of the Drug Enforcement Administration ("DEA") have been investigating various Colombian drug trafficking organizations, including one controlled by Daniel Arnold Barrera-Barrera.   Investigation to date has established that the Barrera organization is involved in the trafficking of multi-kilogram shipments of cocaine from Colombia through Central American and Caribbean countries, and into the United States.

13.   Confidential Source 1 (CS1) became a cooperating witness with this investigation. CS1 used to be involved in procuring aircraft for the BARERRA organization, and, as such, participated in the purchase, maintenance, and transportation of aircraft to be used for drug trafficking ventures.

14.   From time to time the BARERRA organization purchased aircraft through a company called Eagle Support Corporation, owned by Hector Alfonso Schneider-Lindo ("Schneider").   Schneider, through his company, would assist with the purchase of aircraft and, thereafter, would arrange for the aircraft to be exported from the United States to Venezuela after

being de-registered with the Federal Aviation Administration ("FAA").  Schneider frequently worked with Powell Aircraft Title Services in the acquisition of the planes.

15.    According to CS1, most of the aircraft were purchased in the United States with drug proceeds and the organization frequently arranged for drug proceeds to be wired from the Dominican Republic or Mexico to Schneider's escrow account for the purchase of aircraft.

16.    In May of 2011, a second cooperating witness (CS 2) working with the DEA was contacted by the BARRERA organization and asked to pick up $600,344 in proceeds from the distribution of cocaine in New York City in order to finance the purchase of an aircraft through Schneider.

17.    On June 10, 2011, an undercover agent for the DEA picked up the $600,344 in drug proceeds from a member of the BARRERA organization in New York City.   The money was then sent to DEA agents in Miami, Florida.

18.    On June 13 CS 2 was instructed by a member of the BARRERA organization to wire transfer $500,000 of the $600,344 it had received from the BARRERA organization, in increments, to JP Morgan Chase account number ****6661, which account was held in the name of Eagle Support Corporation, for the purpose of purchasing the Defendant Aircraft through Schneider.

19.    On June 13, 2011 agents of the DEA duly deposited $500,000 of the $600,344 it had received from the BARRERA organization into account *****6661 in increments as follows: deposits of $58,000; $42,000; $104,000; $100,000; $75,000; $67,000 and $54,000.

20.    On June 14, 2011, again acting on the instructions of a member of the BARRERA organization, agents of the DEA deposited an additional $70,327 into Bank of America account number *****48493, held in the name of Powell Aircraft Title Services.   The instructions noted that the money was to be deposited "referencia King Air 200 beneficiary Eagle Support."

4

21.    On June 16, 2011, an undercover agent for the DEA picked up $445,960 in proceeds from drug sales from a member of the BARRERA organization in New York City; the money was again sent to DEA agents in Miami, Florida.

22.    On June 21, 2011, again acting on the instructions of a member of the BARRERA organization, agents of the DEA wire transferred $29,673 into Bank of America account number *****48493, held in the name of Powell Aircraft Title Services.   The instructions noted that the money was to be deposited "reference King Air 200, beneficiary Eagle Support."

23.    On June 23, 2011, on the instructions of a member of the BARRERA organization, agents of the DEA deposited $115,750 into Eagle Support account *****6661.

24.    On June 29, 2011, on the instructions of a member of the BARRERA organization, agents of the DEA wire transferred $338,596 from JP Morgan Chase account ******6661 to Bank of America account *******48493 held in the name of Powell Aircraft Title Services. The instructions noted that the money was to be deposited "referencia King Air 200 beneficiary Eagle Support."

25.    A subsequent review of the records of Eagle Support and Powell Aircraft by agents of the DEA showed the receipt of the following amounts wired to them for the purchase of Beechcraft King Air N301GG: on June 13, 2011, the amounts of $100,000; $54,000; $75,000; $104,000; $67,000; $58,000; and $42,000 all to Eagle Support; on June 14, 2011, $70,327 to Powell Aircraft, and on June 21, 2011, $29,673 to Powell Aircraft.

26.    The purchase of the King Air was completed on July 7, 2011, and the Bill of Sale showed the new owner as Eagle Support.   FAA records show that ownership of the aircraft N301GG was transferred to Eagle Support in July, 2011, and it was subsequently registered with FAA in that name.   In addition, a Declaration of International Operations was submitted to the FAA reflecting that aircraft N301GG was intended to be flown to Panama.

27.     The Beechcraft King Air 200 registered as N301GG was one of nine aircraft which DEA undercover agents in Miami purchased during the investigation of Daniel Barrera-Barrera.

28.     Based on the foregoing, there is probable cause to believe that the Beechcraft King Air 200 aircraft registered as N301GG is property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 and 1957 or is property traceable to such property. As such, the Beechcraft King Air 200 aircraft is forfeitable to the United States pursuant to 18 U.S.C. 981(a)(l)(A).

## FIRST CLAIM FOR FORFEITURE

29.     The United States repeats and realleges each and every allegation set forth in paragraphs 1 through 28.

30.     The Defendant Aircraft constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956.   Therefore, the defendant is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR FORFEITURE

31.     The United States repeats and realleges each and every allegation set forth in paragraphs 1 through 28.

32.     The Defendant Aircraft constitutes property derived from narcotics trafficking, has a value in excess of $10,000, and was involved in a monetary transaction in violation of 18 U.S.C. § 1957.   Therefore, the Defendant Aircraft is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

By reason of the foregoing, and pursuant to the provisions of Title 18, United States Code, Section 981, the Defendant Aircraft, including all equipment and accessories, has become and is forfeit to the United States of America.

**WHEREFORE**, plaintiff, United States of America, requests the Court to declare the Defendant Aircraft condemned and forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981, and further requests the Court to direct any and all persons having any claim to the Defendant Aircraft, One Beechcraft King Air 200 Aircraft N301GG, including all equipment and accessories to file and serve their verified claims and answers as required by G(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims, or suffer default thereof, together with such other and further relief as may be just and proper.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY:   s/Karen E. Moore
      KAREN E. MOORE
      ASSISTANT UNITED STATES ATTORNEY
      Florida Bar No. A5500043
      99 N.E. 4th Street, 7TH Floor
      Miami, Florida 33132-2111
      Tel: (305)961-9030
      Fax: (305)536-4089
      Karen.Moore@usdoj.gov

## **VERIFICATION**

I, John J. Costa, Task Force Agent for the Drug Enforcement Administration, declare under penalty of perjury as provided by 28 U.S.C. '1746, that the foregoing Complaint for Forfeiture <u>In</u> <u>Rem</u> is based on information known to me, and the facts alleged therein are true and correct to the best of my knowledge.

JOHN J. COSTA, TASK FORCE AGENT
DRUG ENFORCEMENT ADMINISTRATION

DATE:   07-07-2016